IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KENNETH C. MORRIS         :
                          :
       vs.                :
                          :  CASE NO. 99-360E
ROBERT W. MEYERS, ET AL.  :

FILED
NOV 1 2006
CLERK, U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

**MEMORANDUM OF LAW IN SUPPORT OF
PETITIONER'S APPLICATION FOR RELIEF PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE (60)(b)(6)**

**INTRODUCTION:**

Federal Rule of Civil Procedure 60 provides, in relevant part, "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for . . . any other reason justifying relief from the operation of the judgment." Fed.R.Civ.Proc. 60(b)(6).

Rule 60(b) may be used in habeas proceedings. In the Third Circuit, a motion for relief from judgment pursuant to Rule 60(b) is not a second or successive petition, and therefore not barred by 28 U.S.C. § 2244, if said motion merely challenges the dismissal of a federal proceeding. See United States v. Cabinessu, 278 F.Supp.2d 478, 481 (E.D.Pa. 2003)(citing) Harper v. Vaughn, 272 F.Supp.2d 527, 531 (Dubois, J.); United States v. Harris, 268 F.Supp.2d 500, 502-04 (E.D.Pa.2003)(Dalzell, J.); Pridgen v. Shannon, 2002 WL 31122131, @ 3 (DuBois.J.); See also Rodwell v. Pepe, 324 F.3d 66, 71 (1st Cir. 2003), (courts should determine whether Rule 60(b) motion attempts to raise new claims

or merely seeks to address propriety of prior habeas proceeding): Dunlap v. Litscher, 301 F.3d 873, 876 (7th Cir. 2002); Dunlap v. Frank, 123 S.Ct. 2644 (2003); Thompson v. Calderon, 151 F.3d 918, 921 & n. 2 (9th Cir. 1988); United States v. Rich, 141 f.3d 550, 551 (5th Cir. 1998); Hunt v. Nuth, 57 F.3d 1327, 1339 (4th Cir. 1995); Guinan v. Delo, 5 F.3d 313, 316 (8th Cir.1993).

Petitioner has applied for relief from this Honorable Court's January 25, 2001 order dismissing his habeas petition. Petitioner' Motion seeks only to vacate the federal courts judgment dismissing the habeas petition. The grant of such a motion would not have the effect of invalidating the state conviction. It would merely reinstate the previously dismissed petition for habeas corpus, opening the way for further proceedings seeking ultimately to vacate the conviction. Rodriguez v. Mitchell, 252 F.3d 191, 198 (2nd Cir. 2001). Therefore, through Rule 60(b)(6), the court may reconsider its previous dismissal of Petitioner's habeas petition and ultimately decide to reinstate said petition.

## DISCUSSION:

Relief under Rule 60(b) is warranted in cases where there are "extraordinary circumstances, where, without such relief, an extreme and unexpected hardship would occur." Sawka v. Healtheast, 989 F.2d 138, 140 (3rd Cir. 1993); see also, Morris v. Horn, 187 F.3d 333, 341 (3rd Cir. 1999). Such an extraordinary circumstance justifying relief under Rule 60(b)(6) exists here.

ARGUMENT

DOES THE PETITIONER MAKE A SUBSTANTIAL SHOWING OF THE DENIAL OF A CONSTITUTIONAL RIGHT WHERE HE WAS DENIED A FAIR TRIAL DUE TO COUNSEL'S INEFFECTIVENESS?

Petitioner contends that as a result of counsel's ineffectiveness, misunderstanding and confusion of the statues concerning an insanity defense (guilty but mentally ill) and the mental infirmity defense (diminished capacity), that petitioner was deprived of his rights to due process and equal protection, to a fair trial, to effective assistance of counsel, and to his right to trial by jury in violation of his rights under the 6th and 14th Amendment to the United States Constitution.

It has been long recognized that the right to counsel as guaranteed by the 6th Amendment, is the "right . . . to the effective assistance of Counsel." McMann v. Richardson, 397 U.S. 759, 771, (1970); Strickland v. Washington, 466 U.S. 686 (1984).

Here, counsel advised the petitioner that his best trial strategy would be to waive his jury trial, assert an insanity defense (guilty but mentally ill) and if he were found guilty but mentally ill, he would not be sentenced to imprisonment for life, but rather, that he could be guilty of no offense higher than third degree murder.

Relying on this advice, and believing that a finding of guilty but mentally ill could not result in a life sentence, petitioner acquiesced in counsel's advise to assert an insanity defense and to waive his right to trial by jury and elected not to testify.

Following a three-day trial of evidence and testimony, the

(3)

trial court found petitioner guilty but mentally ill of first degree murder and sentenced him to life imprisonment. Clearly, counsel's advice to petitioner was erroneous and counsel's misunderstanding of these crucial points of law concerning an insanity defense (guilty but mentally ill) caused the petitioner to be found guilty but mentally ill of first degree murder.

Petitioner further contends that trial counsel only offered a defense of insanity to be ineligible for the guilty but mentally ill finding (thinking that this would negate the crime to third degree murder).

The pertinent statutory provisions bearing upon these issues raised in this appeal provide:

### 18 Pa.C.S.A. § 315 Insanity

(a) **General Rule:** - The mental soundness of an actor engaged in conduct charged to constitute an offense shall only be a defense to the charged offense when the actor proves by a preponderance of evidence that the actor was legally insane at the time of the commission of the offense.

(b) **Definition.** - For purpose of this section, the phrase "legally insane" means that, at the time of the commission of the offense, the actor was laboring under such a defect of reason, from the disease of the mind, as not to know the nature and quality of the act he was doing or, if the actor did know the quality of the act, that he did not know that what he was doing was wrong.

### 18 Pa.C.S § 314 Guilty but mentally ill

(a) **General Rule:** - A person who timely offers a defense of insanity in accordance with the Rules of Criminal Procedure may be found: guilty but mentally ill" at trial if the trier of facts finds, beyond a reasonable doubt, that the person is guilty of an offense, was mentally ill at the time of the commission of the offense and was not legally insane at the time of the commission of the offense.

(c) **Plea of guilty but mentally ill:** - A person who waives his trial may plead guilty but mentally ill. No plea of guilty but mentally ill may be accepted by the trial judge until he has examined all reports prepared pursuant to the

Rules of Criminal Procedure has held a hearing on the sole issue of defendant's mental illness at which either party may present evidence and is satisfied that the defendant was mentally ill at the time of the offense to which the plea is entered. If that trial judge refuses to accept a plea of guilty but mentally ill, the defendant whose plea is not accepted by the court shall be permitted to withdraw his plea. A defendant whose plea is not accepted by the court shall be entitled to a jury trial, except if a defendant subsequently waives his right to a jury trial, the judge who presides at the hearing on metal illness shall not preside at the trial.

(c)  **Definitions:** - For the purpose of this section and 42 Pa.C.S. § 9727 (relating to disposition of persons found guilty nut mentally ill):

**"Mentally ill":** - One who as a result of mental disease or defect, lack substantial capacity either to appreciate the wrongfulness of his conduct or to confirm his conduct to the requirements of the law.

**"Legal insanity":** - At the time of the commission of the act, the defendant was laboring under such a defect of reason from disease of the mind, as not to know the nature and quailty of the act he was doing or, if he did know it, that he did not know that what he was doing was wrong.

Petitioner also contends that the course chosen by counsel had no reasonable basis designed to effectuate the client's interest. In the instant case, under Pennsylvania law, guilty but mentally ill defense would not be a desirable tactical approach by defense counsel, because such a finding does not reduce jail time. <u>Section 9727</u> of the Judiciary Code provides:

<u>42 Pa.C.S.A. § 9727 Disposition of persons found guilty but mentally ill</u>

(b)  **Imposition of sentence:** - A defendant found guilty but mentally ill or whose plea of guilty is accepted under the provisions of 18 Pa.C.S. § 314 (relating to guilty but mentally ill) may have any sentence imposed on him which may lawfully be imposed on any defendant conviction of the same offense. Before imposing on any defendant, the court shall hear testimony and make a finding on the issue of whether the defendant at the time of sentencing is severely mentally disabled and in need of treatment pursuant to the provisions

of the act of July 9, 1976 (P.L. 817, No. 143), known as the "Metal Health Procedure AcT."

Mental illness under the Pennsylvania Crime Code will not be permitted to eliminate the mens rea requirement for culpability for otherwise criminal conduct unless the M'Naghten test is met. Subsection 314(a) by its very terms accepts the fact that the offender is guilty of the offense charged, which necessarily implies that the mental illness did not preclude the mens rea required buy the offense. It is equally apparent from section 9727 that a finding of mentally ill was also not intended to mitigate the punishment to be meted out for the commission of the criminal act 42 Pa.C.S. § 9727. Equally as obvious is that it does not create a district offense nor does it provide an enhancement of an existing offense. Section 9727 expressly provides that a defendant found guilty but mentally ill **"may have any sentence imposed on him which may lawfully be imposed on any defendant convicted of the same offense."** The only distinction between the convicted defendant and the convicted defendant determined to have been mentally ill at the time of the commission of the offense is that, in the case of the latter, the judge, before imposing sentence, must take testimony and make a finding as to whether the person at the time of sentencing is severely mentally disabled and in need of treatment. It is only when that convicted defendant is found to be mentally ill and in need of treatment at the time of sentencing, consistent with available resources, that provision will be made to provide psychiatric of psychological treatment. Thus, the only effect of a verdict of guilty but mentally ill is to trigger an inquiry at

the time of sentencing to determine the defendant's mental status at the time of the sentencing phase. It is therefore clear that the additional finding of mentally ill at the time of the offense had no impact upon the adjudicative process. <u>Commonwealth v. Sohmer</u>, 546 A.2d 606, 607 (1988).

Clearly from the above mention statutes and comments, counsel's advised was erroneous. A finding of guilty but mentally ill does not negate a first-degree murder charge to third degree. Counsel obviously confused the newly created insanity defense (guilty but mentally ill) with the mental infirmity defense of diminished capacity. It is evident by trial counsel's Post Verdict Motion in which he states that a finding of guilty of First degree murder, but mentally ill is inconsistent and illogical, since court found that petitioner suffered from a defect of reason from a disease of the mind such as to lack substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law, then as a matter of law, he would lack the capacity necessary for willful, deliberate and premeditated killing to just a finding of murder of first degree.

It is apparent that counsel equated an insanity defense-guilty but mentally ill and a defense of diminished capacity to be one in the same.

Pennsylvania law recognizes a defense of diminished capacity to show that the defendant did not have the capacity to process the state of mind required by the legislature to commit the particular degree of the crime charged; defendants who invoke a

defense of diminished capacity concede general criminal liability. <u>Zettlemoyer v. Fulcomer</u>, 923 F.2d 284 (1991).

Diminished capacity is defined in Pennsylvania Criminal Practice § 2606 as :

**Lack of Capacity to Form Specific Intent:** - Intent has been defined as a specific awareness of what one wants to do and what one wants to accomplish. Criminal intent has also been equated with mens rea. An element of many crimes, such as burglary, endangering the welfare of a children, or murder, is the specific intent to commit some act. If an accused is charged with a crime which requires specific intent to commit some act, a defense would be that the accused lacked the mental capacity to form specific intent required for guilt. <u>Commonwealth v. Grassmyer</u>, 402 A.2d 1052 (1979).

When a defendant alleges diminished capacity he attempts to demonstrate that, although the surrounding circumstances may lead the tier of fact to infer that he acted with specific intent, his psychological make up in fact prevented the foundation of specific intent in the particular instance.

Diminished capacity is an extremely limited defense, and psychiatric testimony in only competent on the issue of specific intent to kill if the testimony speaks to mental disorders affecting the cognitive functions necessary to formulate a specific intent. <u>Commonwealth v. Brown</u>, 578 A.2d 461 (1990) citing <u>Commonwealth v. Weinstein</u>, 451 A.2d 1344 (1982).

First-degree murder is a specific intent crime. An element of murder of the first degree is the specific intent to kill. A

relevant topic of inquiry in a murder trial therefore, is whether the accused had a metal deficiency, which would render him incapable of forming the specific intent to kill. Commonwealth v. Walzack, 360 A.2d 914 (1976). An accused may offer evidence under the theory that he lacked the capacity to form specific intent to kill while conceding general criminal liability. The lack of such capacity would reduce the crime of first-degree murder to third-degree murder.

Unlike counsel's advise, it is apparent from the above mentioned definition that a finding of diminished capacity, not guilty but mentally ill, would have prevented the petitioner from being sentenced to life imprisonment, and he could be guilty of no offense higher than third-degree murder.

In the instant case, counsel failed to raise the defense of diminished capacity and to file a notice of intention to use diminished capacity under Pennsylvania Rule of Criminal Procedure, Rule § 305(C)(1)(b)(recently renamed Rule 357).

In Pennsylvania, a defendant may rely on both insanity and diminished capacity defense in the same case. Geschwendt v. Ryan, 967 F.2d. 877 (1992). A diminished capacity defense which suggest a general culpability for the crime, but negates the specific intent to kill would not have been in conflict with the insanity defense, since both defenses have admitted the commission of the act. Commonwealth v. Legg, 711 A.2d. 430 (Pa. 1998). A defense of diminished capacity is only available to a defendant who admits criminal liability but contests the degree of guilt. Commonwealth v. Williams, 733 A.2d. 1242 (1999).

Diminished capacity is a defense to crimes of specific intent. <u>Hathway v. Ryan</u>, 17 F.3d. 1429 (1994).

In this case, petitioner was charged and the Commonwealth sought a conviction under a theory of murder of first-degree. Section 2505 of the Crime Code defines murder of the first-degree as "criminal homicide . . . committed by an intentional killing. Although the statute does not define "murder" it is well-settled in this jurisdiction that before a person may be convicted of murder, the Commonwealth must show that this killing was committed at the very least with malice aforethought. <u>Commonwealth v. Carter</u>, 393 A.2d. 13 (1978). For a person to be convicted of first-degree murder, the killing must be specifically intended. <u>18 Pa.C.S.A. § 2502(a)</u>. Where the murder is neither intentional nor committed during the perpetration of a felony, it is murder of the third-degree.

In the case at point, it is unbelievable that where an insanity-guilty but mentally ill defense is raised, where mental illness is found, where the judge made a finding that the petitioner was severally mentally disabled and continues to be and is borderline retarded, that in all these discussions, in all the trial transcripts, the words **diminished capacity** were <u>never used</u> by anyone.

Petitioner also argues that although counsel did not technically raise diminished capacity as a defense, the testimony by the defense expert, Dr. Jodh Sangi clearly presented evidence of diminished capacity. Dr. Sangi testified that he had diagnosed petitioner as suffering from a "bipolar illness,"

(10)

formerly called manic depressive disorder, and that he saw no evidence to indicate that petitioner had the willingness or premeditation to commit harm to Kilpatrick.

This evidence speaks to mental disorders affecting the cognitive functions necessary to formulate a specific intent. Bipolar disorder, commonly known as manic depressive disorder, a severe psychiatric disorder in which individuals experience alternating highs and lows-manic depressive episodes. These symptoms often lead to reckless behavior in which the individual would not normally engage and the are likely to have negative consequences. A person suffering from bipolar illness may have difficulty in concentrating, or decision making; and a preoccupation with thoughts of death or suicide, and possible suicide attempts. In the most severe cases, individuals may experience psychotic symptoms such as delusions, or hallucinations in which they lose touch with reality.

Clearly, on the testimony presented by Dr. Sangi, the issue of diminished capacity had been fairly raised. But, because of counsel's effectiveness in failing to formally raise it (in filing a notice as required by 42 Pa.C.S.A. Rules of Criminal Procedure § 305(C)(1)(b), the judge apparently excluded this testimony pursuant to 42 Pa.C.S.A Rule of Criminal Procedure § 304 (C)(1)(d), **Failing to File Notice**: which states if the defendant fails to file and serve notice of alibi defense or insanity or mental infirmity defense required by this rule, or omits any witness from such notice, the court at trial may exclude the testimony of any omitted witness, or may exclude

entirely any evidence offered by the defendant for the purpose of proving the defense.

The petitioner argues that if the judge did not exclude this testimony that he could not have been found guilty beyond a reasonable doubt of first-degree murder.

In the case presented here, the petitioner was clearly suffering from a mental disease, illness or delusional mental state that wholly precluded the cognitive functions of planning, premeditation and deliberation.

Accordingly the petitioner's claim is of arguable merit, as it was admitted by trial counsel and there was no reasonable basis for such advice designed to protect or advance the petitioner's interest. There was also no reasonable justification for counsel's failure to advance a diminished capacity defense that may have produced a verdict of third-degree murder and counsel had no reasonable basis for failing to investigate and present a diminished capacity defense. Clearly trial counsel deprived the petitioner and the court of its right to weigh the evidence and assess the testimony relating to petitioner's diminished capacity that no reliable adjudication of guilt or innocence could have taken place. Counsel's ineffectiveness "so undermined" the trial that the verdict is unreliable.

Petitioner also argues that the petitioner's waiver of his right to trial by jury and his election not to testify were not knowing, intelligent and voluntary, where he was erroneously advised by trial counsel that if he were found guilty but

mentally ill, he could be convicted of no offense higher than third-degree murder.

A criminal defendant, of court has a right to trial by jury under the 6th and 14th Amendments to the United States Constitution. He also has a constitutional right to testify in his own defense, which is grounded in the due process guarantees of the 14th Amendment, the Compulsory Process Clause of the 6th Amendment, and 5th Amendment's protection against compelling self-incrimination. Rock v. Arkansas, 483 U.S. 44, 51-52 (1987). There are among the constitutional rights that "are so fundamental that they are deemed personal to a defendant, and he alone may decide whether these rights will be exercised or waived." United States v. Curtis, 742 F.2d 1070, 1075 (7th Cir.).

The waiver of a fundamental right must be knowing, intelligent and voluntary. It must be an intentional relinquishment of a known right. Johnson v. Zerbst, 304 U.S. 458, (1938); North Carolina v. Butler, 441 U.S. 369 (1979). As the right is the defendant's, it is the defendant, and not trial counsel who must ultimately make the decision whether to waive the right on a given case. The defendant must be aware not only of the essential nature of the right being waived, but also of the consequences of relinquishing the right. E.g., Commonwealth v. Golinsky, 626 A.2d 1224 (1993); Commonwealth v. Shablin, 542 A.2d 511 (1987); Commonwealth v. DeGeorge, 485 A.2d 1089 (1984); Commonwealth v. Carey, 340 A.2d 509 (1975).

In connection with a waiver of the right to trial by jury,

the case have held that a defendant must be advised of the following elements: (1) that the jury will be chosen from members of the community; (2) the accused may participate in selecting the jury; and (3) the verdict must be unanimous. (Id.). Although the court must conduct on the record a colloquy (and such a colloquy was conducted in this case), it is not always sufficient to judge the validity of a waiver by merely looking to the colloquy. Rather, a reviewing court must examine the circumstances surrounding a defendant's waiver. E.g., Shablin, supra.; DeGeorge, supra.; Carey, supra.

Although the appellate courts have been reluctant to go beyond an inquiry as to whether the defendant was advised of these three essential elements, See; e.g., Golinsky and Dunn, supra., they have recognized, for example that a misrepresentation as to sentencing may vitiate the knowing and voluntary nature of a waiver, if the defendant relief on the misrepresentation. See; Commonwealth v. Byng, 364 Pa.Super. 636, 639, 528 A.2d 983, 985 (1987); Commonwealth v. Carey, supra.

In this case, the Court conducted a jury trial waiver colloquy on 2/19/87, and the petitioner also filled out a written, jury trial waiver form. The court's colloquy clearly addressed all three of the essential elements.

In is undisputed that trial counsel advised the petitioner if he were found guilty but mentally ill, he could not also be convicted of first-degree, but at most could be found guilty of murder in the third-degree. However, it must also be recognized that the court, during the colloquy, advised petitioner of all

(14)

possible dispositions, including guilty but mentally ill of first-degree murder, and the petitioner (relying on counsel's advice that the court was wrong in it's determination of the law in this regard), said he understood those options. The trial court did not, however, specifically advise the petitioner that if he were found guilty <u>but mentally ill</u> of first-degree murder, he would be sentenced to life in prison. Petitioner testified: "I didn't think guilty but mentally ill would get you a life sentence. . ." He also stated that he relied on counsel's advice in waiving his right to trial by jury and electing not to testify.

At least two cases - <u>Carey</u> and <u>Byug</u>, <u>supra</u>., recognize that misinformation about sentencing may vitiate the voluntariness of a jury trial waiver. In <u>Carey</u>, the misinformation was provided by trial counsel, and in <u>Byng</u>, by the Court.

However, it is not entirely unreasonable to envision situations in which counsel and the court may have differing opinions concerning a point of law. For example, there have been many situations where the court denied a suppression motion, and defense counsel advised "waive your jury we'll win on appeal," See; e.g. <u>Tower v. Phillips</u>, 979 F.2d 807, 814 (11th Cir. 1992)(in assessing whether guilty pleas was knowing and voluntary, based on attorney's erroneous advice, the fact that the trial court property conducted the plea colloquy did not guarantee that the plea was constituently valid); but cf., <u>Martin v. Blackburn</u>, 606 F.2d 92, 94 (5th Cir. 1979), cert. denied, 446 U.S. 911 (counsel's erroneous advice concerning

consequences of plea was cured by sentencing judge's admonition to defendant); United States v. Gonzalez-Mercaso, 808 F.2d 796, 800 (1987)(federal court must rely on defendant's responses during plea colloquy).

Likewise, in connection with a claim of ineffectiveness related to the decision whether or not to testify in ones' own behalf at trial it had been recognized that erroneous advice by counsel may affect the knowing and voluntary nature of the decision. See; e.g., Commonwealth v. Boyd, 688 A.2d 1172, 1175 (1997)(defendant must show either that counsel interfered with his freedom to testify, or gave him advice that was so unreasonable that it vitiated his knowing and intelligent decision not to testify); accord, Commonwealth v. Fowler, 523 A.2d 784, 787 (1987); Commonwealth v. Martin, 499 A.2d 344 (1985); See; also; United States v. Curtis, supra. (defendant's personal right to testify may not be waived by counsel as a matter of trial strategy); Jones v. Hawii, 902 F.2d 965 (1995)(same); Horton v. South Carolina, 411 S.E.2d 223 (1991).

There is no question in this case that counsel's advice on this crucial issue was erroneous. The remaining question, then, is whether there was "prejudice" as contemplated by the last prong of the Strickland test. Prejudice is not established by looking at the ultimate issue of guilt or innocence - i.e., and outcome determinative test - but rather, the answer to the question of whether, but for counsel's erroneous advice, the defendant would have nevertheless waived a jury trial and elected not to testify. See; e.g., Leatherwood v. Mississippi, 539 S.2d

(16)

1378, 1384-87 (Miss. 1989)(focus of Strickland's "prejudice" inquiry in not on ultimate outcome, buy on whether counsel's misconduct played a substantial role in the particular decision at issue); Meier v. Iowa, 337 N.W.2d 204, 207 (Iowa 1983)(due process deprivation occurs when defendant was "unable to make an intelligent and informed choice from among his alternative course of action . . .").

Obviously, there are many considerations that influence the decisions whether to waive a jury, or to testify at trial. In this case, if petitioner knew he was facing life in prison, he would have been more inclined to trust his fate to the unanimous decision of a jury of his peers, rather that to a single individual. On the other hand, if the petitioner is led to belief that he is likely to be found mentally ill, in which case he would face only 10-20 years in prison, he would be much more inclined to acquiesce in counsel's advice, in order to accomplish other strategic objectiveness.

The ultimate decision, however, is the petitioner's not counsel's and if the decision was based on erroneous advice, it can be neither knowing or intelligent.

Petitioner contents that he has demonstrated by a showing that "but for arguably ineffective acts and omissions of trial counsel," there is a reasonable probability that the result would have been different. It is clear that the petitioner's mental illness as defined in 18 Pa.C.S. § 314(C)(1), at the time he committed the offense in question negated an element of the offense of first-degree murder, thus requiring this court to

(17)

Vacate this conviction of first-degree murder. It would certainly be a miscarriage of justice to let this conviction stand given the fact that petitioner is not guilty of first degree murder. In order to remedy this error, it is requested that this Honorable Court reinstate Petitioner's initial habeas petition, pursuant to Fed.R.Civ.Proc. 60(b)(6), and allow Petitioner to amend this petition nunc pro tunc, pursuant to Fed.R.Civ.Proc. 15(c)(2).

WHEREFORE, Petitioner respectfully requests that this Honorable Court grant his application for relief pursuant to Fed.R.Civ.Proc. 60(b)(6) and reinstate his habeas petition nunc pro tunc.

Respectfully submitted,

/( /)
Kenneth C. Morris
Petitioner, Pro se
Box A, AJ1083
Bellefonte, PA 16823-0820

**CERTIFICATE OF SERVICE**

I, Kenneth C. Morris Petitioner, Pro se hereby certify that I have filed and served a copy of the foregoing documents upon the District Attorney's Office of McKean County, Pennsylvania via first class mail this __13 th__ day of November 2006.

District Attorney's Office
McKean County Courthouse
Smethport, Pa.  16749


_/s/ K___M_____
Kenneth C. Morris
Petitioner, Pro se
Box A, AJ1083
Bellefonte, Pa.  16823-0820